O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY NAPEL,<br><br>          Plaintiff,<br><br>     v.<br><br>PHILLIPS 66 COMPANY,<br>JAMES RAND,<br>KURTIS LAWSHE,<br>MIKE GUZMAN, and<br>DOES 1 10, inclusive,<br><br>          Defendants. | Case No. 8:23-cv-02382-JWH-DFMx<br><br>**ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 42]** |

## I.  SUMMARY OF DECISION

Before the Court is the motion of Defendants Phillips 66 Company, Kurtis Lawshe, and James Rand for summary judgment against Plaintiff Henry Napel.[1]  The Court conducted a hearing on Defendants' Motion in January 2025.  After considering the papers filed in support and in opposition, as well as the argument of counsel at the hearing, the Court orders that Defendants' Motion is **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

## II.  BACKGROUND

### A.    Factual Allegations[2]

Phillips 66 is "an advantaged downstream company, with segment-leading refining and marketing, midstream and chemical businesses with 1,300 employees worldwide."[3]  In October 2014, Phillips 66 hired Napel to work as an operator at the company's Los Angeles refinery.[4]  As an operator, Napel was "responsible for ensuring the refinery equipment in his assigned unit was maintained properly within its safe operating limits."[5]

---

[1]     Defs.' Mot. for Summary J. (the "Motion") [ECF No. 42]; *see also* Defs.' Mot. for Leave to File Corrected Memorandum, Ex. A (the "Memorandum") [ECF No. 44].

[2]     The material facts set forth below are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purpose of summary judgment.  *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  The Court deems a fact undisputed when the parties' "disputes" of that fact are merely restatements of the same fact, they do not actually contradict the substance of a fact, or they argue the relevancy and materiality of an otherwise undisputed fact.  *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  The parties object to multiple items of evidence filed with the Motion.  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself"; they are thus "redundant" and need not be considered.  *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").  The Court therefore **OVERRULES** all such objections.  Additionally, the Court need not consider some of the evidence to which the parties have objected in order to decide the Motion.  Objections not specifically addressed are **OVERRULED**.

[3]     Am. Joint Statement of Undisputed Facts and Genuine Disputes (the "Joint Statement") [ECF No. 61] 1.

[4]     *Id.* at 3 & 4.

[5]     *Id.* at 4.

According to Napel, his employment with Phillips 66 was fraught with discrimination and harassment. In December 2017, while Napel was working as an operator in the Fluid Catalytic Cracker Unit, he transmitted an email to Human Resources in which Napel complained that Defendant Rand—who also worked as an operator—had been harassing Napel.[6] Based upon the complaint, members of the Human Resources department met with Napel, who explained that, two months earlier, Rand had threatened Napel and had sabotaged Napel's work.[7]

Napel's supervisor, non-party Morgan Hannifin, worked with Human Resources to investigate the allegations. Following that investigation, Human Resources determined that, while Napel's allegations were "very serious," they were also unsubstantiated.[8] Human Resources reminded Napel and Rand that they should work collaboratively and instructed Napel that, in the future, he should "immediately" inform his supervisor of issues with his colleagues.[9]

In January 2021, Napel filed a second complaint. Specifically, Napel complained to Hannifin that another operator, non-party Matt Potts, had "charged at [Napel] with his chest out" while Napel was sitting in a chair.[10] Potts then "hovered over [Napel]" with "his right fist [in] a ball and with his arm and shoulder cocked back."[11] Potts then said, "say one more thing and I'm going to f*** you up."[12] Phillips 66 conducted an investigation, and Potts was disciplined.[13]

Two months later, in March 2021, Phillips 66 implemented a "turnaround" of Napel's unit, at which time parts of the refinery were shut down for maintenance, cleaning, and upgrade.[14] Napel was assigned to serve as a coordinator during the turnaround, which entitled Napel to a pay raise.[15] Shortly after the turnaround began, Napel's supervisor, non-party Eric Caseras, engaged in two discussions with Napel

---

[6]     *Id.* at 5 & 22; *see also* Joint Exhibit, Part C [ECF No. 42-6] 292.

[7]     Joint Statement 23 & 24.

[8]     *Id.* at 26; *see also* Joint Exhibit, Part A, Decl. of Danny Negrotto, Ex. E [ECF No. 42-4] 245.

[9]     Joint Statement 27 & 28.

[10]    *Id.* at 31; Joint Exhibit, Part A [ECF No. 42-4] 33, 125:12–19 (the "Napel Deposition").

[11]    Joint Statement 31; Napel Deposition 125:14–16.

[12]    *Id.*

[13]    Joint Statement 32; *see also* Joint Exhibit, Part C [ECF No. 42-6] 299–302 (records of investigation and discipline).

[14]    Joint Statement 33.

[15]    *Id.* at 36.

regarding Napel's performance as a coordinator, because Caseras found Napel's performance to be unsatisfactory.[16] In response, Napel insisted that he "had everything under control."[17]

While Napel worked for Phillips 66, he also served as a member of the Air Force Reserve.[18] As a member of the Reserve, Napel was required to spend one weekend per month and two weeks per year on military duties, away from his job at Phillips 66.[19] Napel also periodically requested medical leave from Phillips 66 for back pain that he suffered.[20] After the conversations with Caseras regarding Napel's allegedly unsatisfactory performance, Napel took several days of medical leave and military leave, such that he was out of work for most—if not all—of the next two weeks.[21]

It is undisputed that Phillips 66 provided Napel with time off for military service and that each time Napel returned from military or medical leave, Phillips 66 kept Napel's position open so that Napel returned to the same pay and shift.[22] However, when Napel returned from leave in March 2021, Caseras explained that Napel would be removed from the temporary coordinator position because Caseras "needed the position to be filled on a full-time basis," and Caseras "did not like how Napel performed the role."[23] For the rest of the turnaround, Napel was assigned a different task—writing policies.[24]

After Napel was removed from the temporary coordinator role, he filed a complaint against Caseras and Rand. In that complaint, Napel claimed that Caseras and Rand had discriminated, harassed, and retaliated against Napel by removing him as a temporary coordinator.[25] As with Napel's prior complaints, Phillips 66 launched a

---

[16]   *Id.* at 37 & 38; *see also* Joint Exhibit, Part C [ECF No. 42-6] 313.

[17]   Joint Statement 39.

[18]   *Id.* at 7.

[19]   *Id.*

[20]   *Id.* at 12.

[21]   *Id.* at 40.

[22]   *Id.* at 9, 10, & 12.

[23]   *Id.* at 41.

[24]   *Id.* at 42.

[25]   *Id.* at 43; *see also* Joint Exhibit, Part C [ECF No. 42-6] 309–312.

lengthy investigation.[26] Over the course of a month, members of the Human Resources department interviewed various employees, including Napel.[27]

During one of those interviews, Napel told members of the Human Resources department that Defendant Mike Guzman,[28] who also worked as an operator, had taken a photograph of Napel using the bathroom.[29] Phillips 66 investigated that complaint as well, and when another operator corroborated Napel's allegation, Guzman was fired.[30] However, Phillips 66 was not able to corroborate Napel's other allegations regarding discrimination and harassment by Caseras and Rand.[31] Instead, multiple supervisors confirmed that Napel's performance as a coordinator was unsatisfactory.[32]

In August 2021, several months after the investigation into Guzman, Caseras, and Rand concluded, Napel filed yet another complaint—this time, regarding the investigation itself.[33] That complaint was also investigated,[34] and in December 2022, Napel was promoted to Head Operator.[35] A few months later, in February 2023, Napel was assigned to work as an outside operator—a position for which he had recently become certified.[36]

While Napel was working as an outside operator in February 2023, another operator, non-party Ignacio Alvarez, asked Napel to increase pressure to a tank, which caused Napel to ask about opening a "new line at bypass."[37] Alvarez responded that he did not know what bypass Napel was referring to because the tank did not have a bypass.[38] Napel then became confused, and he told Alvarez, "I don't understand what you're

---

[26]   Joint Statement 44 & 45.

[27]   *Id.* at 45 & 46.

[28]   During the hearing on the Motion, with Napel's counsel's concurrence, the Court dismissed Guzman as a party Defendant. *See* Minute Order re Hr'g re the Motion [ECF No. 66] ¶ 2.

[29]   Joint Statement 46.

[30]   *Id.* at 47 & 48; *see also* Joint Exhibit, Part C [ECF No. 42-6] 335–339 (investigation and disciplinary records).

[31]   *Id.* at 49.

[32]   *Id.*

[33]   *Id.* at 50.

[34]   *Id.* at 76.

[35]   *Id.* at 51.

[36]   *Id.* at 52.

[37]   *Id.* at 55.

[38]   *Id.* at 56.

trying to say. Do you want me to open it, yes or no? Simple, yes or no."[39] Defendant Lawshe heard the exchange on the radio traffic, so he went to Napel's area and opened one of the steam valves.[40] That action corrected the problem that Alvarez had asked Napel to address.[41]

Later during that same shift, Alvarez asked Napel to check the level of a piece of equipment called a B-settler.[42] Napel responded that he had checked the level "five minutes ago," then said, "[S]top trying to find work for me to do. That's harassment. Stop it."[43] Alvarez reminded Napel that checking levels was part of Napel's job, and then—when Napel did not respond—Alvarez tried to reach Napel on the phone.[44] Napel hung up on Alvarez, then transmitted over the radio, "[N]ext time I hang up on you on the phone, don't call me on the radio. That's harassment. Do you understand?"[45] Napel also told Alvarez, "I will never take advice from you. Look at you and look at me. You need to take advice from me."[46]

After that exchange, Alvarez and Napel asked the shift supervisor, non-party Keith Dowling, to intervene.[47] Dowling instructed Napel to comply with Alvarez's requests.[48] Shortly thereafter, Lawshe tried to attract Napel's attention because Lawshe had noticed that Alvarez was once again trying to reach Napel on the radio.[49] Napel threatened to call the police on Lawshe,[50] and then Dowling escorted Napel to a breakroom, where Napel stayed for the remainder of his shift.[51]

---

[39]     *Id.* at 57; *see also* Joint Exhibit, Part A [ECF No. 42-1] 164–183 (the "<u>Radio Traffic Transcript</u>").

[40]     Joint Statement 58.

[41]     *Id.*

[42]     *Id.* at 59.

[43]     *Id.* at 60; Radio Traffic Transcript 171:11–14.

[44]     Joint Statement 62.

[45]     *Id.* at 61–63.

[46]     *Id.* at 64; Radio Traffic Transcript 181:1–3.

[47]     Joint Statement 65.

[48]     *Id.* at 66.

[49]     *Id.* at 67.

[50]     *Id.*

[51]     *Id.* at 68.

Based upon the events that occurred during that shift, Dowling transmitted an email to various other Phillips 66 employees about Napel's conduct.[52] Napel also sent an email to various refinery personnel, including members of the Human Resources Department, in which he wrote, "I don't feel safe around Kurtis Lawshe anymore."[53] Attached to that email was a "history of verbal abuse, harassment, and verbal life threatening threats," which referenced a 2021 incident during which Lawshe allegedly threatened to kill Napel and another operator.[54] Napel had not previously complained to anyone about that alleged incident, but Napel did claim that two supervisors were present when Lawshe made that threat.[55]

Following the Dowling and Napel emails, Phillips 66 conducted investigations into both reports.[56] The investigator, non-party Danny Negrotto, confirmed that Napel had not complied with directions during his shift as an outside operator.[57] But Negrotto was unable to corroborate Napel's allegations about Lawshe.[58] Instead, Negrotto concluded that Napel had abused the reporting system and had attempted to retaliate against Lawshe.[59] Based upon his investigations, Negrotto recommended that Phillips 66 terminate Napel's employment.[60] Refinery leadership agreed with that recommendation, and Napel was terminated in April 2023.[61]

**B.    Procedural History**

Napel commenced this case in November 2023 in Los Angeles County Superior Court.[62] The following month, Defendants removed the action to this Court.[63] Napel asserts the following 22 claims for relief:

- wrongful termination in violation of public policy, against Phillips 66;

---

[52]     *Id.* at 69.

[53]     *Id.* at 70; Joint Exhibit Part B, Decl. of Danny Negrotto (the "<u>Negrotto Declaration</u>") [ECF No. 42-5], Ex. N at 272.

[54]     *Id.*

[55]     Joint Statement 70 & 77.

[56]     *Id.* at 71.

[57]     *Id.* at 72.

[58]     *Id.* at 73; *see also* Negrotto Declaration, Exs. P & Q at 277–286 (investigation reports).

[59]     Joint Statement 74.

[60]     *Id.* at 79.

[61]     *Id.* at 80; *see also* Joint Exhibit, Part D [ECF No. 42-7] 417 (notice of termination).

[62]     *See* Compl. (the "<u>Complaint</u>") [ECF No. 1-1].

[63]     *See* Notice of Removal [ECF No. 1].

- medical leave retaliation in violation of Cal. Gov't Code § 12945.2 ("CFRA"), against Phillips 66;
- paid sick leave discrimination in violation of Cal. Labor Code § 246.5, against Phillips 66;
- paid sick leave retaliation in violation of Cal. Labor Code § 246.5, against Phillips 66;
- medical leave discrimination in violation of CFRA, against Phillips 66;
- retaliation for using and requesting and using accommodations for disabilities in violation of Cal. Gov't Code § 12940 ("FEHA"), against Phillips 66;
- failure to engage in the interactive process in violation of FEHA, against Phillips 66;
- failure to provide reasonable accommodations in violation of FEHA, against Phillips 66;
- disability discrimination in violation of FEHA, against Phillips 66;
- disability harassment in violation of FEHA, against Phillips 66, Rand, and Lawshe;
- discrimination against persons who served in the armed forces, in violation of 38 U.S.C. §§ 4311(a) & 4323(a) ("USSERA"), against Phillips 66;
- retaliation in violation of USSERA, against Phillips 66;
- interference with legal rights by intimidation or threat of violence in violation of the California Bane Act, Cal. Civ. Code § 52.1, against Phillips 66 and Lawshe;
- assault, against Phillips 66 and Lawshe;
- retaliation in violation of FEHA, against Phillips 66;
- sex discrimination in violation of FEHA, against Phillips 66;
- sexual harassment in violation of FEHA, against Phillips 66 and Guzman;
- invasion of privacy, against Phillips 66 and Guzman;
- failure to prevent discrimination and retaliation in violation of FEHA, against Phillips 66;
- whistleblower retaliation in violation of Cal. Labor Code §§ 1102.5 & 1102.6, against Phillips 66;
- failure to pay wages due upon termination in violation of Cal. Labor Code §§ 202–03, 218.5, 218.6, 227.3, & 233, against Phillips 66; and
- failure to pay overtime in violation of Cal. Labor Code §§ 510 & 1194, against Phillips 66.

Defendants filed the instant Motion in September 2024.[64] Napel filed an Opposition, in which he abandoned his claims for (1) sick leave discrimination; (2) sick leave retaliation; (3) sex discrimination; (4) invasion of privacy; (5) failure to pay wages

---

[64]    *See* Motion.

due upon termination; and (6) failure to pay overtime.[65]  The Court conducted a hearing on the Motion on January 10, 2025.

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  The substantive law determines the facts that are material.  *See id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  Factual disputes that are "irrelevant or unnecessary" are not counted.  *Id.*  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *See id.* at 325.  Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case.  *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  *See Celotex*, 477 U.S. at 324.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).  The non-moving party must make that showing on all matters

---

[65]  *See* Pl's Opp'n to the Motion (the "<u>Opposition</u>") [ECF No. 43] 32:7–9.

placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

## IV.  DISCUSSION

### A.    USSERA and Medical Leave (Claims 11 & 12)

When evaluating a USSERA claim, the court performs a two-step analysis. "[F]irst, the claimant must show by a preponderance of the evidence that his or her military service was a 'substantial or motivating factor' to cause an adverse employment action." *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1108 (9th Cir. 2017). "[S]econd, assuming the claimant has done so, the employer may avoid liability only by putting forward an affirmative defense that it would have taken the same action without regard to the military service." *Id.*

Napel appears to argue that Phillips 66 took two adverse employment actions based upon Napel's military service: (1) in March 2021, Napel was removed from a coordinator position after taking military leave; and (2) in April 2023, Napel's employment was terminated.[66]

With respect to Napel's termination, there is no basis on which a jury could conclude that Phillips 66 violated USSERA. At the time that Napel was terminated, he had not served in the Reserve for over two years, and there is no evidence tying his termination to his military service.[67]

---

[66]    *See id.* at 15:1–17:19.

[67]    Joint Statement 11; *see generally* Opposition.

There is, however, sufficient evidence for a jury to conclude that the March 2021 decision to remove Napel from the coordinator position was substantially motivated by Napel's military service. Specifically, it is undisputed that Napel was removed from the coordinator position in part because Phillips 66 needed someone to fill that role on a full-time basis, and Napel could not be available on a full-time basis because of his service in the Reserve.[68]

The burden therefore shifts to Phillips 66 to demonstrate that it would have taken the same action without regard to Napel's military service. But Phillips 66 has not argued that it would have taken the same action without regard to Napel's military service. Instead, Phillips 66 maintains that the on-site attendance requirement was reasonable.[69] Phillips 66 may be correct about that, but it has provided no authority for the proposition that the reasonableness of a requirement is a basis for finding that the requirement does not violate USSERA.

Accordingly, Defendants' Motion is **DENIED** with respect to the USSERA claims insofar as those claims relate to Phillips 66's March 2021 decision to remove Napel from the temporary coordinator position.

### B.   Discrimination and Retaliation (Claims 2, 5, 9, 15, 19 & 20)

Napel asserts a variety of discrimination and retaliation claims under CFRA and FEHA, all of which are related to Napel's disability, his requests for medical leave, or his reports that he was subject to harassment or discrimination. In particular, Napel alleges that he was (1) discriminated against on account of his disability and use of medical leave; and (2) retaliated against because of his disability, because he used medical leave and because he filed reports against coworkers who discriminated against or harassed him. Defendants move for summary judgment on all of Napel's discrimination and retaliation claims.

#### 1.   Legal Standards for Discrimination Claims

Under FEHA, an employer generally may not discharge an employee because of the employee's "physical disability, mental disability, [or] medical condition." Cal. Gov't Code § 12940(a). "To show a prima facie case of disability discrimination under FEHA, a plaintiff must show that: (1) she is a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination; and (4) some other circumstances that suggest a

---

[68]   Joint Statement 41.
[69]   *See* Memorandum 13:10–13.

discriminatory motive." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013). With respect to a disability discrimination claim, "an employee bears the burden of showing (1) that he or she was discharged because of a disability, and (2) that he or she could perform the essential functions of the job with or without accommodation." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 962 (2008).

CFRA makes it unlawful for an employer "to refuse to grant a request by any employee . . . to take up to a total of 12 workweeks in any 12-month period for family care and medical leave." Cal. Gov't Code § 12945.2(a). CFRA also makes it unlawful for an employer "to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of . . . [the] individual's exercise of the right to family care and medical leave." *Id.* at § 12945.2(k).

The court applies the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting framework to claims asserted under FEHA and CFRA. *See Trop v. Sony Pictures Entertainment, Inc.*, 129 Cal. App. 4th 1133, 1144 (2005) (FEHA); *Nelson v. United Techs.*, 74 Cal. App. 4th 597, 613 (1999) (CFRA). Under that framework, "the plaintiff must make out a prima facie case." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (citing *McDonnell Douglas*, 411 U.S. at 802). In a disability discrimination case, a plaintiff may make out a *prima facie* case by showing "that he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010).

"Once the prima facie case is made," the burden "shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for its action." *Weil*, 922 F.3d at 1002. If the defendant provides a nondiscriminatory reason, the burden shifts back to the plaintiff, who "must produce evidence that the defendant's 'proffered nondiscriminatory reason is merely a pretext for discrimination." *Id.* (quoting *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005)).

### 2. Legal Standard for Retaliation Claims

The standard for establishing a retaliation claim is similar to the standard for establishing a discrimination claim. To succeed on a FEHA retaliation claim, a plaintiff must show "(1) the employee engaged in protected activity; (2) the employee was subjected to an adverse employment action; and (3) a causal link between the protected activity and adverse action." *Tandon v. GN Audio USA, Inc.*, 2021 WL 242916, at *8 (N.D. Cal. Jan. 25, 2021) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)). Similarly, to establish a CFRA retaliation claim, a plaintiff must show that "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee

eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action." *Dudley v. Dept. of Transp.*, 90 Cal. App. 4th 255, 261 (2001). Like discrimination and harassment claims, retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework. *See Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016).

### 3. Analysis

It is somewhat unclear which adverse employment actions Napel alleges that Phillips 66 took because of or in retaliation for his disability, his use of medical leave, or his complaints against other employees. The Complaint does not specify any adverse employment action with respect to any of the claims, and, in his deposition, Napel insisted that the only adverse employment action taken against him was a 2022 write-up that he received for failing to call out of work in a timely manner before a shift.[70] That write-up does not constitute an adverse employment action because it did not carry any adverse consequence nor "materially affect[] the terms, conditions, or privileges of" Napel's employment. *Flores v. City of Westminster*, 873 F.3d 739, 748 (9th Cir. 2017). In his Opposition, however, Napel refers to the decisions to remove him from the coordinator position and to terminate him.[71]

Napel's claims fail regardless of the basis for those claims. Even assuming that Napel has satisfied his *prima facie* burden with respect to each of his harassment, discrimination, and retaliation claims, Napel cannot show that Phillips 66 lacked legitimate justifications for its actions or that those justifications were pretextual.

To start, with respect to the coordinator position, it is undisputed that Phillips 66 had legitimate, nondiscriminatory justifications for its decision to remove Napel from that role, and there is no evidence that those justifications were pretextual. On two separate occasions, Napel's supervisor, Caseras, spoke with Napel regarding Napel's performance in the coordinator role because Napel was not performing in accordance with Caseras's standards.[72] It is also undisputed that, rather than addressing Caseras's concerns, Napel insisted that everything was under control.[73] Additionally, multiple employees at Phillips 66 confirmed that Napel was not performing satisfactorily.[74]

---

[70] *See* Napel Deposition 62:1–63:13.
[71] *See generally* Opposition.
[72] *See* Joint Statement 37 & 38.
[73] *Id.* at 39.
[74] *Id.* at 49.

In arguing that there are triable issues of fact related to the decision to remove him from the coordinator position, Napel points to statements that his coworkers allegedly made regarding his use of military and medical leave and the proximity in time between Napel's use of medical leave and his removal from the coordinator role. But Napel concedes that no supervisor or decisionmaker harbored animus toward him on account of his use of disability or medical leave.[75] Similarly, evidence regarding the timing of Phillips 66's decision to remove Napel from the coordinator position helps Napel satisfy his *prima facie* burden, but that evidence does not establish that Caseras's performance-related concerns were pretextual. To the contrary, Napel admitted that he did not perform the coordinator tasks in the way that Caseras expected and admitted that he "operate[d]/coordinate[d] things differently than everyone else."[76] Napel likewise conceded that, when Caseras raised concerns about Napel's performance, Napel insisted that he had things under control.[77]

So too for Phillips 66's April 2023 decision to terminate Napel. It is undisputed that the company's decision to terminate Napel followed a February 2023 shift during which Napel refused to comply with the requests of other operators, stopped responding to other operators who attempted to contact him, and threatened to call the police on Lawshe.[78] Moreover, it is undisputed that, following that incident, Napel filed a report in which Napel accused Lawshe of threatening to kill Napel and that after an extensive internal investigation, it was determined that Napel made that claim in bad faith.[79] Indeed, Napel has not made any colorable arguments that his termination was related to anything other than his conduct during the February 2023 shift and the report that he made about Lawshe, and Napel has offered no evidence of pretext.

Accordingly, Defendants' Motion is **GRANTED** with respect to Napel's FEHA and CFRA discrimination and retaliation claims, including derivative claims for failure to prevent discrimination and retaliation.

### C. Failure to Accommodate, Retaliation for Requesting Accommodations, and Failure to Engage in the Interactive Process (Claims 6–8)

FEHA provides that it is unlawful for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an" employee. Cal. Gov't Code § 12940(m). The "essential elements" of a claim for failure to

---

[75] *See* Napel Deposition 249:6–10.

[76] *See id.* at 139:9–25, 149:1–15; *see also* Joint Exhibit, Part B [ECF No. 42-5] 254.

[77] Joint Statement 39.

[78] *Id.* at 66–69.

[79] *Id.* at 74.

accommodate "are: (1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is a qualified individual; and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014). "A plaintiff is a 'qualified individual' if he can perform the essential functions of the desired job either with or without accommodation." *Id.* (quoting *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011)). "To face liability under [Cal. Gov't Code] section 12940(m), an employer must have been aware of the employee's disability." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. 2015).

Additionally, California law provides that an employer must "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee [] with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015).

Here, there is no evidence that Napel requested an accommodation. Indeed, Napel testified during his deposition that he never requested an accommodation.[80] Accordingly, Defendants' Motion is **GRANTED** with respect to Napel's claims for failure to accommodate, retaliation for requesting accommodations, and failure to engage in the interactive process.

D.  **Assault (Claim 14)**

To state a claim for common law assault under California law, a plaintiff must "establish (1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). In California, an employer is generally vicariously liable for its employee's tort, even if the employee committed that tort intentionally. *See Carr v. Wm. C. Crowell Co.*, 28 Cal. 2d 652, 654 (1946). An assault claim is subject to a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1.

Here, it is undisputed that Napel has claimed that the alleged assault—the incident during which Lawshe allegedly threatened to shoot Napel—occurred in January 2021.[81] The statute of limitations for the assault claim therefore expired in January 2023. Napel

---

[80]  *See* Napel Deposition 71:23–25.

[81]  Joint Statement 70 & 73.

did not file the Complaint in this action until December 2023—nearly a year after the statute of limitations expired.[82] Accordingly, Defendants' Motion is **GRANTED** with respect to Napel's assault claim.

### E.     Bane Act (Claim 13)

To assert a claim under the Bane Act, Napel must show "(1) intentional inference or attempted interference with a state or federal constitutional legal right, and (2) [that] the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

The basis for Napel's Bane Act claim is unclear. In his Opposition, Napel refers to the assault and Bane Act claims together, and he cites Lawshe's alleged statements regarding Napel's absences from work.[83] To the extent that Napel relies upon those comments to demonstrate Lawshe's intent to interfere with Napel's use of leave, it is undisputed that Lawshe was not a supervisor and that Lawshe did not exercise any control or authority over Napel's employment. Moreover, Napel provides no support for his conclusion that statements such as "you're never here" constitute threats sufficient to succeed on a Bane Act claim.

Accordingly, Defendants' Motion is **GRANTED** with respect to Napel's Bane Act claim.

### F.     Harassment (Claims 10 & 17)

#### 1.     Disability Harassment

To establish his claim for disability harassment under FEHA, Napel must show that he was "subjected to harassing conduct that was (1) unwelcome; (2) because of [his disability]; and (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Bailey v. San Francisco Dist. Attorney's Office*, 16 Cal. 5th 611, 627 (2024). "[H]arassment claims focus on 'situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Id.* (quoting *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009)) (emphasis in original). To determine whether an employee was subject to a hostile work environment, a court must evaluate the work environment "in light of the totality of the circumstances." *Id.* at 628. "Simple teasing, offhand comments, and

---

[82]     *See* Complaint.

[83]     *See* Opposition 30:15–24.

isolated incidents (unless extremely serious) are not sufficient to create an actionable form of harassment." *Id.* (alterations and quotations omitted).

"When the harasser is a supervisor, the employer is strictly liable for the supervisor's actions." *Id.* at 635. However, when the harasser is a nonsupervisory employee, the employer is not liable for harassment unless the employer "knows or should have known of th[e] conduct and fail[ed] to take immediate and appropriate corrective action." *Id.* (citing Cal. Gov't Code § 1290).

Napel contends that there are triable issues of fact related to his disability harassment claims against Phillips 66, Rand, and Lawshe because of statements that Rand and other operators made to Napel. Those statements include comments such as "you're never here" and "we have to worry about covering your shift."[84] Napel also claims that his coworkers "expressed resentment" against him because he "took both short-term disability leave and military leave."[85] Napel has not identified any inappropriate or offensive comments made by Lawshe or any of his supervisors.[86]

First, because Napel has not identified any harassing conduct committed by Lawshe, Napel's claims against Lawshe necessarily fail. Second, it is undisputed that the alleged harassment all occurred at the hands of coworkers, not supervisors. Phillips 66 is therefore liable for harassment only if it failed to take immediate and appropriate corrective action. *See Bailey*, 16 Cal. 5th at 635. The record is clear that Phillips 66 promptly and thoroughly investigated each of Napel's harassment claims and that Phillips 66 took corrective actions in response to each claim—even, at times, when Napel's claims were largely unsubstantiated.

With respect to Rand, there is insufficient evidence in the record to create a factual dispute regarding whether Napel was subject to a hostile work environment. Even assuming that Rand made all of the offensive comments that Napel alleges Rand to have made, those statements do not give rise to a claim for disability harassment because none of the alleged comments was made because of—or even necessarily in relation to—Napel's disability.[87] Additionally, the record does not support a finding that the comments were sufficiently severe or pervasive to create a hostile work environment. To the contrary, the record is replete with evidence that Napel's claims were unsubstantiated.

---

[84]     *See id.* at 18:7–12.

[85]     *See id.* at 18:14–18.

[86]     *See id.* at 18:7–26.

[87]     *See id.*

Accordingly, Defendants' Motion is **GRANTED** with respect to Napel's claims for disability harassment.

### 2. Sexual Harassment

To establish a claim for sexual harassment, a plaintiff must show that "(1) she was subjected to verbal or physical contact of a sexual nature, (2) the conduct was unwelcome, and (3) the abusive conduct was sufficiently severe *or* pervasive so as to alter the conditions of her employment thus creating an abusive working environment." *Sheffield v. Los Angeles Cnty. Dept. of Social Servs.*, 109 Cal. App. 4th 153, 161 (2003) (emphasis in original). The test for determining whether a work environment was abusive and whether an employer is liable for a sexual harassment claim are the same as for a disability harassment claim. *See Bailey*, 16 Cal. 5th at 628.

Napel's sexual harassment claim is premised entirely on the incident during which Guzman took a photograph of Napel using the bathroom.[88] That single incident was likely insufficiently severe or pervasive to create a hostile work environment. *See Sheffield*, 109 Cal. App. 4th at 161. But even if that incident were severe and pervasive, it is undisputed that Napel did not file any official complaint or notify any supervisor or Human Resources personnel about that incident until May 2021. Furthermore, it is undisputed that Phillips 66 investigated Napel's claim immediately and that Phillips 66 terminated Guzman soon thereafter.[89]

Accordingly, Defendants' Motion is **GRANTED** with respect to Napel's claim for sexual harassment.

### G. Wrongful Termination (Claim 1)

"Unless the parties contract otherwise, employment relationships in California are ordinarily 'at will,' meaning that an employer can discharge an employee for any reason." *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). The tort cause of action for wrongful termination in violation of public policy creates an exception to that general rule. *See id.* To succeed on a wrongful termination claim, a plaintiff must show that he or she was terminated in violation of a public policy that was "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *City of Moorpark v. Super. Ct.*, 18 Cal. 4th 1143, 1159 (1998).

---

[88]   *See id.* at 11:7–14.

[89]   Joint Statement 46 & 48.

Napel's wrongful termination claim is derivative of his statutory claims; he has not asserted that his termination violated any constitutional provision.[90] Accordingly, because Phillips 66's decision to terminate Napel did not violate any statute, Defendants' Motion is **GRANTED** with respect to Napel's wrongful termination claim.

### V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' instant Motion for summary judgment [ECF No. 42] is **GRANTED in part** and **DENIED in part**.

2. Specifically,

   a. Defendants' Motion is **DENIED** with respect to Napel's claims under USSERA (*i.e.*, Claims 11 & 12), insofar as those claims relate to Phillips 66's March 2021 decision to remove Napel from the temporary coordinator position; and

   b. Defendants' Motion is **GRANTED** with respect to all of Napel's other claims.

3. A Scheduling Conference is **SET** for March 21, 2025, at 9:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

**IT IS SO ORDERED.**

Dated: February 18, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[90] *See generally* Complaint; Opposition.